IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 4, 2007

Charles R. Fulbruge III
Clerk

No. 06-20896

In The Matter Of: JAMES PAVLOSKY; DEBORAH THUMANN-PAVLOSKY

Debtors

_____

JAMES PAVLOSKY; DEBORAH THUMANN-PAVLOSKY

Appellants

v.

UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE

Appellee

Appeal from the United States District Court
for the Southern District of Texas, Houston
USDC No. 4:06-CV-2061

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-appellants James Pavlosky and Deborah Thumann-Pavlosky filed a core adversary proceeding in their Chapter 13 bankruptcy seeking a tax abatement of $147,538 for taxable year 2000 and a refund of $26,030 for taxable

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

year 2001 from defendant-appellee, the United States Internal Revenue Service. The bankruptcy court granted the Internal Revenue Service's motion for summary judgment and dismissed with prejudice the Pavloskys' complaint. The bankruptcy court determined that the Pavloskys' 2001 capital loss from the sale of certain stock obtained through the exercise of an incentive stock option did not give rise to a net operating loss for purposes of the regular income tax or the alternative minimum tax net operating loss deduction. Consequently, the Pavloskys could not carry that capital loss back to taxable year 2000 to offset the income realized in that year on the exercise of the stock option or use the capital loss to offset their ordinary income for taxable year 2001. The Pavloskys appeal the district court's judgment affirming the bankruptcy court. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The case arises from an adversary complaint filed by Chapter 13 debtors James Pavlosky and Deborah Thumann-Pavlosky ("Taxpayers") against the Internal Revenue Service (the "IRS"). Taxpayers asked the bankruptcy court to determine federal income tax liability relative to their alternative minimum tax ("AMT"), resulting from the exercise of an incentive stock option ("ISO"). Taxpayers and the IRS stipulated to the relevant facts of this case.

James Pavlosky ("Pavlosky") was employed by Network Appliance, Inc., during tax years 1999, 2000, and 2001. Network Appliance granted Pavlosky ISOs that allowed him to acquire shares of Network Appliance stock as part of his compensation package.

On December 20, 2000, Pavlosky exercised an ISO that allowed him to acquire 30,000 shares of Network Appliance stock. Pavlosky paid $3.2040 per share, and each share had a fair market value ("FMV") of $53.75 on the date of exercise. Thus, Pavlosky paid $96,120 for stock with a FMV of $1,612,500. Taxpayers chose not to sell the shares in 2000. Throughout 2001, but within twelve months of the exercise date of December 20, 2000, Taxpayers sold 28,944

of the 30,000 shares they had acquired for total sales proceeds of $200,345.95. The per share sales price in each of these sales ranged from $6.2806 to $9.8217, representing a loss from the AMT basis, as represented by the FMV of the shares at the time of exercise.

Taxpayers originally filed a joint tax return for taxable year 2000 that included, for AMT purposes, income stemming from the exercise of the ISO in that year. As discussed above, though, the incentive stock was sold at a substantial loss relative to its AMT basis throughout 2001. Consequently, in 2004, Taxpayers filed an amended 2001 tax return treating the loss realized on the sale of the stock as a net operating loss ("NOL") deduction, which eliminated their tax liability for that year. Taxpayers also filed an amended 2000 return, in which they attempted to carry back to that year the remainder of their loss to reduce their AMT liability for 2000. The IRS disallowed the claims for refund contained in the amended returns.

On January 24, 2005, Taxpayers filed a voluntary petition for Chapter 13 bankruptcy relief in the United States Bankruptcy Court for the Southern District of Texas. On May 11, 2005, the Taxpayers filed an adversary proceeding in the bankruptcy court, wherein they requested a determination of their income taxes for the years 2000 and 2001. After entering a joint stipulation, the parties filed cross-motions for summary judgment on the issue whether the Internal Revenue Code (the "Code") permitted taxpayers to treat their 2001 losses on the sale of stock as a NOL for purposes of the AMT.

On June 1, 2006, the bankruptcy court ruled for the IRS. The bankruptcy court rejected Taxpayers' contention that Congress intended in all situations that gains and losses from the exercise of an ISO and subsequent sale of the acquired stock offset each other, concluding that the Code reserved this relief for transactions occurring within the same taxable year, not any consecutive 12 month period, thus rendering taxpayers ineligible for such relief.

Taxpayers appealed to the United States District Court for the Southern District of Texas. The IRS again relied on the Code's provisions dealing with capital loss limitations and the AMT, and Taxpayers focused on the alleged intent of Congress, as well as a number of policy and equitable considerations. On October 5, 2006, the district court issued its Memorandum and Order ruling for the IRS. It concluded that 26 U.S.C. ("I.R.C.") §§ 56 and 1211 governed the matter, and, consequently, that the capital loss limitations applied for purposes of the AMT, as well as the regular tax. The district court also rejected the tax relief intent that taxpayers attempted to ascribe to Congress, determining that Taxpayers' conjectures in this regard were unsupported by either the actual language of the Code or specific legislative history.

Taxpayers filed a timely notice of appeal to our court.

## II. DISCUSSION

Taxpayers' argument that their loss in 2001 constitutes a regular tax NOL that may be used to offset their ordinary income in the year 2001 and an alternative tax net operating loss ("ATNOL") that may be carried back to offset the income realized in 2000 on Pavlosky's exercise of the ISO is foreclosed by our recent opinion in Merlo v. Commissioner of Internal Revenue, 492 F.3d 618 (5th Cir. 2007). In rejecting the claim of the taxpayer in Merlo that he was entitled to carry back the loss he incurred when his incentive stock subsequently became worthless, we explained that once the taxpayer exercised his ISO, he began holding the stock he acquired as a capital asset. 492 F.3d at 623. As such, the loss he incurred in the following year was a capital loss. Id. We consequently held that, under the applicable Code provisions, the capital loss incurred by the taxpayer in Merlo did not give rise to a NOL or ATNOL that could be carried back to offset the AMT he realized upon the initial exercise of his ISO. Id. at 623–24. Our holding in Merlo is dispositive of Taxpayers' similar attempt in the

instant case to carry back the capital loss they incurred on the sale of their incentive stock in 2001.

Additionally, Taxpayers' assertion that their case is distinguishable from Merlo because, unlike the taxpayer there, they made a disqualifying disposition, within the meaning of I.R.C. §§ 421 and 422, of the stock they acquired upon Pavlosky's exercise of the ISO is meritless. The exercise of an ISO is not a taxable event for regular tax purposes. Id. § 421. Section 421, however, does not apply for purposes of the AMT, and, thus, the exercise of an ISO is a taxable event for AMT purposes.[1] I.R.C. § 56(b)(3); Merlo, 492 F.3d at 621. If a taxpayer makes a disqualifying disposition under I.R.C. § 422 of his incentive stock because he fails to meet the holding period requirements, he will realize ordinary income, as opposed to a capital gain, for regular tax purposes, in the year the disposition occurs. I.R.C. § 421(b). As indicated above, however, section 421 does not apply for purposes of the AMT, and the special rule of I.R.C. § 422(c)(2), allowing for losses sustained from a disqualifying disposition of incentive stock

---

[1] Sections 56(b) and 56(b)(3) provide:

> (b) Adjustments applicable to individuals.—In determining the amount of the alternative minimum taxable income of any taxpayer (other than a corporation), the following treatment shall apply (in lieu of the treatment applicable for purposes of computing the regular tax):
>
> . . . .
>
> > (3) Treatment of incentive stock options.—Section 421 shall not apply to the transfer of stock acquired pursuant to the exercise of an incentive stock option (as defined in section 422). Section 422(c)(2) shall apply in any case where the disposition and the inclusion for purposes of this part are within the same taxable year and such section shall not apply in any other case. The adjusted basis of any stock so acquired shall be determined on the basis of the treatment prescribed by this paragraph.

I.R.C. §§ 56(b), (b)(3) (emphasis added).

to offset the gross income includible from the exercise of the ISO, applies in the AMT context only where the exercise of the ISO and the disqualifying disposition occur in the same taxable year "and such section shall not apply in any other case." Id. § 56(b)(3); see supra n.1.

In the instant case, Pavlosky exercised his ISO in 2000, and Taxpayers made their claimed disqualifying disposition of the incentive stock in 2001. It therefore follows that neither I.R.C. § 421 nor I.R.C. § 422 has any application in this case for purposes of computing Taxpayers' AMT. Accordingly, Taxpayers' reference to these provisions provides no basis to distinguish our decision in Merlo that a capital loss realized with respect to stock acquired pursuant to the exercise of an ISO does not give rise to a NOL or ATNOL that can be carried back to offset the AMT realized on the exercise of the option. 492 F.3d at 623–24.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.